```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT

TAIFOOR JAMIL,                      :
                                    :
     Plaintiff,                     :
                                    :
     v.                             :      Case No. 2:14-cv-145
                                    :
VERMONT ATTORNEY GENERAL'S          :
OFFICE, CHITTENDEN COUNTY           :
STATE'S ATTORNEY'S OFFICE,          :
CHITTENDEN UNIT FOR SPECIAL         :
INVESTIGATIONS, SOUTH               :
BURLINGTON POLICE DEPARTMENT,       :
BURLINGTON POLICE DEPARTMENT,       :
TWO UNDISCLOSED INDIVIDUALS,        :
SOUTH BURLINGTON SCHOOL             :
DISTRICT, AGENCY OF HUMAN           :
SERVICES, VERMONT DEPARTMENT        :
OF LABOR, VERMONT HUMAN             :
RIGHTS COMMISSION,                  :
                                    :
     Defendants.                    :
```

**OPINION AND ORDER**

Plaintiff Taifoor Jamil, proceeding *pro se*, brings this action claiming unlawful conduct by various government officials including law enforcement, prosecutors, and South Burlington School Department personnel.  The Court previously dismissed two state defendants from the case.  All remaining defendants, with the exception of two unidentified individuals, now move to dismiss the Complaint for failure to state a claim.  For the reasons set forth below, the motions to dismiss are **granted**, and Mr. Jamil is granted leave to amend his Complaint with regard to selected defendants within 30 days.  Failure to file a timely Amended Complaint may result in dismissal of the case.

**Factual and Procedural Background**

In his 54-page complaint, Mr. Jamil claims that the Vermont state court system, law enforcement, government agencies, school personnel, and two undisclosed individuals conspired against him to deprive him custody of his two children.  Specifically, the Complaint alleges that Mr. Jamil's wife applied for public assistance benefits in 2007, and that shortly thereafter Mr. Jamil was summoned to Vermont Family Court.  On March 20, 2009, South Burlington police officers allegedly removed Mr. Jamil from his home in the middle of the night and served with a temporary relief from abuse order upon this release the following day.  Mr. Jamil has reportedly been issued "no trespass" notices restricting him from his children's school and from the family's home.  *Id.* at 45.

Later in 2009, the Chittenden Family Court, Judge Matthew Katz presiding, conducted a two-day divorce trial.  Mr. Jamil alleges that the final order and decree of divorce, ultimately issued by Judge Patricia Zimmerman, accused him and his family of criminal acts for which he was never charged or prosecuted.  This Court takes notice of the fact that on October 21, 2010, the Vermont Supreme Court affirmed the final order and decree of divorce issued by the Chittenden Family Court awarding sole parental rights and responsibilities to the mother of Mr. Jamil's two children.  *Sultana v. Jamil*, 2010 WL 7799813, Nos. 2010-062,

2010-212 (Vt. Oct. 21, 2010)(unpublished entry order). The Vermont Supreme Court found no abuse of discretion based upon the lower court's finding that Mr. Jamil had abused his wife for twenty years, and affirmed a child support order continuing Mr. Jamil's existing obligations. *Id*. Mr. Jamil alleges that the facts and findings underlying the Chittenden Family Court's order were false, were the result of perjury, and constituted obstruction of justice.

Mr. Jamil brings his claims pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. For relief, he seeks to have the United States Government "take over the authority of The State of Vermont Government agencies involved" for ninety-nine years and award him ninety-nine years' worth of Defendants' annual budgets. *Id.* at 54. Mr. Jamil has moved separately for a grand jury investigation. ECF No. 2.

## Discussion

### I. Motion to Dismiss Standard

Each of the motions to dismiss now before the Court has been submitted, at least in part, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint are accepted as true, and all reasonable inferences must be drawn in Mr. Jamil's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d

184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the Complaint if Mr. Jamil has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court should construe the factual allegations in the light most favorable to Mr. Jamil, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  *Id*.  When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that Mr. Jamil relied on in bringing suit and that are either in his possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Because Mr. Jamil is proceeding *pro se*, the Court must

"construe his complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted) (alteration omitted). "Even in a *pro se* case, . . . 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). Thus, although the Court must "draw the most favorable inferences" that the plaintiff's complaint supports, it "cannot invent factual allegations that [she] has not pled." *Id.*

**II. South Burlington School District's Motion to Dismiss**

The Complaint alleges generally that the defendants in this case engaged in various conspiracies to deprive him of his constitutional rights. With regard to school-related matters specifically, the Complaint alleges that defendants "forced minor child out of academic learning, forced to fear a horrified inhuman submission, drugs, rape." ECF No. 4 at 24-25. Mr. Jamil also claims that in 2009, at the request of an assistant principal, South Burlington police issued him a "no trespass" order restricting him from entering school property.

The South Burlington School District (hereinafter "SBSD") first argues that Mr. Jamil's claims are time barred. The claims in this case are brought pursuant to 42 U.S.C. § 1983. For purposes of Section 1983 actions, federal courts borrow the state

law personal injury statute of limitations period. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). In Vermont, the relevant limitations period is three years. 12 V.S.A. § 512(4). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the claim's accrual. Federal law governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)).

The primary allegations in the Complaint focus on Chittenden Family Court proceedings that began in 2007 and resulted in an order by Judge Zimmerman in 2009. A "no trespass" order was also allegedly served in 2009 at the request of an SBSD employee. Under a three-year statute of limitations, Mr. Jamil had until 2012 at the latest to file his claims. The current Complaint was not filed until 2014. Accordingly, and with no response from Mr. Jamil on the issue of tolling, the Court finds that the allegations being brought against the SBSD are untimely.

Furthermore, the Complaint fails to allege a plausible claim

of SBSD participation in a conspiracy.  To state a cognizable conspiracy claim under Section 1983, a complaint must allege sufficient facts to plausibly suggest "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights are not sufficient to support a cognizable claim under section 1983.  *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983).

Here, Mr. Jamil's claims fall short of alleging any sort of agreement by employees of SBSD to engage in an unlawful conspiracy.  The most specific allegations with regard to educational actors is that a child was "forced . . . out of academic learning," but the identities of the people responsible for that event have not been pled.  Mr. Jamil also alleges communications between South Burlington police and an assistant principal, but those communications were merely informative and do not appear to have been part of a conspiracy to inflict unconstitutional injury.

The Court therefore finds that Mr. Jamil's Complaint fails to allege a plausible constitutional claim against the SBSD

insofar as his claims are untimely and insufficient.  Because the SBSD's arguments on these points fully support its motion to dismiss, the Court need not address its additional arguments with regard to municipal liability and qualified immunity.  The Court also finds, however, that an amended pleading might bring both clarity and plausibility to those claims.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated") (internal quotation and citation omitted).  Specifically, Mr. Jamil may provide greater detail about the relevant dates and the people involved in any alleged wrongdoing.  Accordingly, SBSD's motion to dismiss is **granted**, and as set forth below, Mr. Jamil may amend his Complaint to clarify his claims against the SBSD.

### III. City of Burlington's Motion to Dismiss

The City of Burlington, on behalf of the Burlington Police Department,[1] has moved to dismiss for failure to state a claim because Mr. Jamil does not make any reference to the police department itself in the body of the Complaint.  The Complaint instead refers to law enforcement generally.  With multiple law

---

[1] This Court has previously determined that the Burlington Police Department is not an entity that may be sued, and that a plaintiff should instead bring claims against the City itself. *See Gorton v. Burlington Police Dep't*, 23 F. Supp. 2d 454, 456 (D. Vt. 1998); *Hee v. Everlof*, 812 F. Supp. 1350, 1351 (D. Vt. 1993).

enforcement defendants named in the case caption it is not clear which allegations, if any, are brought against the Burlington Police Department.

Where a plaintiff fails to mention a named defendant in the body of the complaint, dismissal is appropriate. *See, e.g., Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 435 (S.D.N.Y. 2004) (dismissing *pro se* complaint against individual defendants not mentioned in body of complaint). Nonetheless, because Mr. Jamil does allege various unlawful acts by law enforcement generally, he may amend his claims to specify whether any members of the Burlington Police Department were involved. *See Cuoco*, 222 F.3d at 112. Leave to amend is therefore granted as set forth below.

**IV. South Burlington Police Department's Motion to Dismiss**

The SBPD moves to dismiss Mr. Jamil's claims, arguing: (1) the Complaint is time barred, (2) the SBPS is not an entity that may be sued, and (3) the Complaint fails to set forth any basis for municipal liability. Unlike the claims against the Burlington Police Department, the SBPD is specifically referenced within the body of the Complaint.

Mr. Jamil first references two SBPD case numbers in a list of "Action(s), called into question[] to The Court of Law." ECF No. 4 at 16. With respect to the first case number, he was allegedly "[f]ramed . . . with Criminal charges based on

conspiracy, false, fabricated & manufactured self-imposed FACTS." *Id.* at 38. He claims that this first case was dropped by prosecutors in October 2006. The second SBPD case number refers to "Trespass Order, Home & school," and appears to be related to the allegation that in April 2009 an "officer relegated [Mr. Jamil] to Second Class Human" and "issued a trespass order restricting [him] from going to [his] home." *Id.* at 43-44.

The Complaint also alleges that on March 20, 2009, the South Burlington Police forcefully removed Mr. Jamil from his home and detained him. He claims that he was not charged "but was handed a Temporary Order for Relief From Abuse" and released that same day. *Id.* at 43. In April 2009, Judge Linda Levitt reportedly denied the request for a relief from abuse order. Immediately thereafter, Mr. Jamil traveled to his daughter's school, where SBPD officers allegedly informed the Assistant Principal that the school could obtain a trespass order. On April 15, 2009, the SBPD issued Mr. Jamil the "no trespass" order.

As discussed previously, Mr. Jamil's claims are brought pursuant to 42 U.S.C. § 1983, to which this Court applies a three-year statute of limitations. The alleged events involving the SBPD appear to have occurred between 2006 and 2009. As the Complaint was not filed until 2014, and absent any apparent grounds for tolling, the claims brought against the SBPD are time-barred.

With regard to whether the SBPD may be sued, this Court has held that the proper party is not the police department, but rather the town itself. *See Gorton*, 23 F. Supp. 2d at 456; *Hee*, 812 F. Supp. at 1351. Given that general proposition, the SBPD next argues that Mr. Jamil's claims do not allege sufficient facts to support a plausible claim for municipal liability. A municipality or municipal entity, such as the City of South Burlington, cannot be held liable under Section 1983 on a *respondeat superior* theory. *See Monell v. Dep't of Social Svcs. of City of New York*, 436 U.S. 658, 691 (1978); *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that action pursuant to official municipal policy caused the alleged constitutional injury." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also Monell*, 436 U.S. at 690–91.

To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, *see Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); (2) actions taken or decisions made by municipal policymaking officials which caused the alleged violation of plaintiff's civil rights, *see Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000); (3) a

practice "so persistent and widespread as to practically have the force of law," *Connick*, 131 S. Ct. at 1359; *see also Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006), or that "was so manifest as to imply the constructive acquiescence of senior policy-making officials," *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (quotations and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates." *Cash*, 654 F.3d at 334 (quotations and citations omitted); *see also Okin v. Village of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir. 2009).

Here, even giving the Complaint the required liberal reading, the Court finds no allegations sufficient to state a Section 1983 cause of action against the City of South Burlington. Specifically, there is no mention of a municipal custom or policy and no reference whatsoever to policymaking officials. Absent any such allegations, the Complaint fails to state a plausible claim for relief, and the SBSD's motion to dismiss is **granted**. However, because an amended pleading might rectify these shortcomings, and as the Second Circuit strongly encourages granting leave to amend for *pro se* plaintiffs, *see Cuoco*, 222 F.3d at 112, the Court will again permit the filing of a timely-filed Amended Complaint as set forth below.

**V.   Chittenden Unit for Special Investigations Motion to Dismiss**

Defendant Chittenden Unit for Special Investigations (hereinafter "CUSI") moves to dismiss the Complaint as vague and conclusory. The Complaint sets forth two factual allegations against the CUSI. In the first, Mr. Jamil claims that the CUSI, together with the Vermont Department of Children and Families, "OCS & Court of Law continued to Deceive the law in closed door Conspiracy regarding child custody, parental rights and responsibility." ECF No. 4 at 10. The Complaint next makes reference to documents indicating different addresses for members of Mr. Jamil's family, when in fact his family was living together at the time. The only other factual allegation against CUSI is that, together with state agencies and the Vermont judiciary, "[e]nslaved Me, my children and Mom through forceful imposed Injustice." *Id.* at 12. Other references to CUSI merely name it as a party and as the subject of constitutional claims. *Id.* at 2, 4, 18.

The Court agrees that these allegations against CUSI fail to state a plausible claim of either a conspiracy or constitutional violations. A complaint "containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (internal quotation marks omitted). The claims currently being brought against CUSI are both conclusory and vague, asserting only in the

most general terms an effort to provide false information. Without more specific allegations with respect to CUSI's role, the Complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The motion to dismiss is therefore **granted**, again with leave to amend.

### VI.  State Defendants' Motion to Dismiss

The motion to dismiss before the Court is that of state defendants the Vermont Attorney General's Office, the Office of the Chittenden County State's Attorney, the Vermont Agency of Human Services, the Vermont Department of Labor, and the Vermont Human Rights Commission (collectively "State Defendants").[2] The State Defendants assert several grounds for dismissal, including immunity under the Eleventh Amendment.

The Eleventh Amendment states: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The Supreme Court has interpreted this provision to bar suits against state

---

[2] Though not listed in the case caption, certain state officials, including Attorney General William Sorrell and Chittenden County State's Attorney T.J. Donovan, are listed thereafter as parties.  The Complaint does not assert any specific allegations with respect to those officials, they have not been served with process, and the State Defendants' motion to dismiss does not address, or apply to, those officials.

governments by a state's own citizens as well as by citizens of another state. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Unless a state consents to suit or provides an express or statutory waiver of immunity, the Eleventh Amendment bars suits in federal court against state governments. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). These principles apply equally to state agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

A waiver of Eleventh Amendment immunity by a state must be unequivocally expressed. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). The State of Vermont has not consented to be sued, and has instead expressly retained its Eleventh Amendment immunity. *See* 12 V.S.A. § 5601(g) ("Nothing in this chapter waives the rights of the state under the Eleventh Amendment of the United States Constitution."). Moreover, Congress has not abrogated Vermont's immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding 42 U.S.C. § 1983 does not abrogate states' Eleventh Amendment immunity). Accordingly, the Vermont offices and agencies named as State Defendants are entitled to immunity from suit in federal court.

A narrow exception to Eleventh Amendment immunity allows a federal court to issue an injunction against a state official in

his or her official capacity who is acting contrary to federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *New York Health and Hospitals Corp. et al. v. Perales*, 50 F.3d 129 (2d Cir. 1995). Mr. Jamil has not asked for any such relief from or with respect to specific state officials, and instead requests that the federal government take over the authority of state agencies. The State Defendants' motion to dismiss is therefore **granted**.

Because the Eleventh Amendment bar cannot be overcome in federal court, the Court declines to grant leave to amend with respect to these defendants, and the allegations against them are **dismissed without prejudice**.

## VII. Mr. Jamil's Pending Motions

A. Motion to Appoint a Grand Jury

Mr. Jamil has three motions now pending before the Court. The first (ECF No. 2) requests appointment of a grand jury and a resulting investigation. With regard to initiating any sort of criminal action or investigation, "it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual." *Price v. Hasly*, 2004 WL 1305744, at *1 (W.D.N.Y. June 8, 2004) (citing *Leeke v. Timmerman*, 454 U.S. 83 (1981); *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973)); *see also Rzayeva v. United States*, 492 F. Supp. 2d 60, 87 (D. Conn. 1975) (commencement of a federal criminal case by submission of evidence to a grand jury is "an executive

function within the exclusive prerogative of the Attorney General"). Mr. Jamil's motion for appointment of a grand jury is therefore **denied.**

B.   Motion for Preliminary Injunctive Relief

Mr. Jamil's next motion (ECF No. 29) asks for a series of Court orders purportedly to protect his children's lives. Those orders would include: restricting public disclosure of the identity or physical location of his children and their mother; ordering South Burlington High School to submit academic reports dating back to 2010; ordering the "appropriate authority to protect and ensure safety and peace and well-being of" his children and their mother; and ordering the reunions of his mother and children. ECF No. 29. Construing this motion as one for preliminary injunctive relief, Mr. Jamil has the burden of showing irreparable harm and either a substantial likelihood of success on the merits of his claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010). When, as in this case, the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher, requiring a "clear showing that the moving party is entitled to the relief requested" or that "very serious damage will result from a denial

17

of preliminary relief." *Id.* at 35 n.4 (internal quotations and citations omitted).

As explained above, Mr. Jamil's allegations are highly conclusory and lack sufficient plausibility to proceed. His claims in support of a preliminary injunction are similarly conclusory, as he offers few facts to support findings of either a likelihood of success or likely harm. *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."). Because Mr. Jamil has failed to carry his burden for preliminary injunctive relief, his motion for protection is **denied**.

Mr. Jamil's third motion before the Court (ECF No. 30) provides the names of the undisclosed individual defendants and asks that they be entered on the docket. Because the Court does not add parties to the docket absent the filing of an amended pleading, this motion is **denied**. That said, Mr. Jamil may wish to add these individuals as defendants in an Amended Complaint.

**VIII. Leave to Amend**

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints without granting leave to amend at least once "'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v.*

*Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Nonetheless, leave to amend may be denied in certain circumstances, including futility or "repeated failure to cure deficiencies by amendments previously allowed." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

Here, Mr. Jamil has not yet filed an Amended Complaint, and given his current allegations, may have plausible claims. The Court will therefore allow him to amend his current Complaint with respect all named defendants with the exception of the State Defendants. Amended claims against the State Defendants, each of which is some form of state agency, would be futile because immunity under the Eleventh Amendment would again apply.

Any amended filing should be entitled "Amended Complaint" and should contain all claims against all remaining parties as it will supersede the original Complaint in all respects. The Amended Complaint, if any, shall be filed within 30 days of this Opinion and Order. Failure to timely amend may result in dismissal of all claims with prejudice.

## Conclusion

For the reasons set forth above, Mr. Jamil's motion to appoint and order a grand jury investigation (ECF No. 2), expedited motion to save and protect and ensure his children's

lives (ECF No. 29), and motion to identify two undisclosed individual defendants (ECF No. 30) are **denied**.  Defendants' motions to dismiss (ECF Nos. 15, 20, 22, 24, 26) are **granted**.  Mr. Jamil is granted leave to file an Amended Complaint within 30 days except with respect to the State Defendants, who have been dismissed from the case without prejudice and for whom any amended pleading would be futile.

    Dated at Burlington, in the District of Vermont, this 4th day of February, 2015.

                                    /s/ William K. Sessions III
                                    William K. Sessions III
                                    District Court Judge